UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ELIAS GUERRA                    )
                                )
          v.                    )    CIVIL ACTION
                                )    No. 05-10440-PBS
UNITED STATES OF AMERICA        )
                                )

**OPPOSITION TO MOTION
PURSUANT TO 28 U.S.C. §2255**

The United States opposes petitioner's motion pursuant to 28 U.S.C. §2255. In support of its Opposition the government states the following.

1. The motion should be dismissed as untimely. In the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Congress established a "1-year period of limitation" governing section 2255 motions. 28 U.S.C. §2255, ¶6. In this case, the one-year period runs from the date on which the judgement of conviction became final. Id. When, as here, a prisoner/petitioner does not take a direct appeal from his conviction, the conviction becomes final when the time for filing a notice of appeal expires. Sanchez-Castellano v. United States, 358 F.3d 424, 428 (6th Cir,. 2004); Wims v. United States, 225 F.3d 186, 188 (2d Cir. 2000). Here, Judgement entered on January 8, 2004. See Judgement, attached as Exhibit 1. The time for filing a notice of appeal expired on January 18, 2004, ten days after the entry of the judgement. See Rule 4(b)(1)(A)(i) of the Federal Rules of Appellate Procedure. Consequently, the one-year period of limitation for the filing of a §2255 motion ran on

January 18, 2005.  Because the petitioner did not file his motion until on or about March 7, 2005 [1], it is untimely and should be dismissed.

2.  Petitioner's apparent assertion (see his Memorandum of Law, passim) that his counsel was ineffective (and that the Court erred) because he was sentenced as a "career offender" and without the filing by the government of a notice pursuant to 21 U.S.C. §851 is incorrect.  The petitioner did not receive a "career offender" enhancement at sentencing, and 21 U.S.C. §851 is inapplicable to his case.  See the PSR, attached as Exhibit 2. (The defendant was convicted of Illegal Re-entry of a Deported Alien in violation of 8 U.S.C. §1326(a)).

3.  Petitioner's apparent assertions (see his Motion passim) that: his counsel was ineffective because his sentence was improperly enhanced above the Base Offense Level (of 8); and his sentence should have been reduced because he illegally re-entered the United States because of "family relationship and responsibilities" are misplaced.  Petitioner's sentencing guideline range was based, in part, upon an applicable enhancement for prior criminal conviction(s).  (See Exhibit 2 at ¶¶20-28.)  Moreover, petitioner's counsel filed a "Motion For

---

[1]  According to the Docket, petitioner's motion was initially filed on March 7, 2005.  The motion itself appears to be dated February 15, 2005.  The petitioner filed a Memorandum of Law in support of his motion on April 11, 2005.

Downward Departure" on the ground that petitioner illegally reentered the United States because of "extreme family circumstances."  See petitioner's motion, attached as Exhibit 3. The Court denied the motion.

<u>Conclusion</u>

For the above-stated reasons, petitioner's motion should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney


By: <u>/s/ CHRISTOPHER F. BATOR</u>
Assistant U.S. Attorney

Date: July 13, 2005


<u>CERTIFICATE OF SERVICE</u>

I, CHRISTOPHER F. BATOR, certify that I have served a copy of the above upon Elias Guerra, Federal Reg. No. 24777-038, FCI Ray Brook, P.O. Box 9007, Ray Brook, NY 12977 by first class mail.

<u>/s/CHRISTOPHER F. BATOR</u>
Assistant U.S. Attorney

Date: July 13, 2005

EXHIBIT 1

AO 245B Sheet 1 - Judgment in a Criminal Case - D. Massachusetts (03/02)

# United States District Court
## District of Massachusetts

UNITED STATES OF AMERICA

v.

**ELIAS GUERRA**

**JUDGMENT IN A CRIMINAL CASE**

(For Offenses Committed On or After November 1, 1987)

Case Number: **1: 03 CR 10183 - 001 - PBS**

John Amabile, Esq.

Defendant's Attorney

### THE DEFENDANT:

[x] pleaded guilty to count(s): 1 of an Indictment

[ ] pleaded nolo contendere to counts(s) _____ which was accepted by the court.

[ ] was found guilty on count(s) _____ after a plea of not guilty.

Accordingly, the court has adjudicated that the defendant is guilty of the following offense(s):

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 8 USC § 1326 | Illegal Re-entry of Deported Alien | 05/01/03 | 1 |

[ ] See continuation page

The defendant is sentenced as provided in pages 2 through 5 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[ ] The defendant has been found not guilty on counts(s) _____ and is discharged as to such count(s).

[ ] Count(s) _____ is dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States Attorney of any material change in the defendant's economic circumstances.

Defendant's Soc. Sec. No.: none

Defendant's Date of Birth: 00/00/69

Defendant's USM No.: 24777-038

Defendant's Residence Address:

34 Hano Street
Allston, MA 02134

Defendant's Mailing Address:

Plymouth County House of Correction
26 Long Pond Road
Plymouth, MA 02360

01/07/04

Date of Imposition of Judgment

Signature of Judicial Officer

The Honorable Patti B. Saris

Name and Title of Judicial Officer

Judge, U.S. District Court

Date     1/8/04

AO 245B Sheet 2 - Imprisonment - D. Massachusetts (10/01)

CASE NUMBER: **1: 03 CR 10183  - 001 - PBS**                    Judgment - Page  2  of  5
DEFENDANT:
                           **ELIAS GUERRA**

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of      41    month(s)

Court orders credit given for 30 days in Immigration custody, making the additional time to be served 40 months.

☐  The court makes the following recommendations to the Bureau of Prisons:

☒  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:
    ☐  at _____ on _____
    ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:
    ☐  before _____ on _____
    ☐  as notified by the United States Marshal.
    ☐  as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By  _____
Deputy U.S. Marshal

AO 245B  Sheet 3 - Supervised Release - D. Massachusetts (10/01)

CASE NUMBER: 1:  03  CR  10183   - 001 -  PBS
DEFENDANT:

Judgment - Page  3 of  5

## ELIAS GUERRA
## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of          24     month(s)

If ordered deported, defendant is to leave the United States and not to return without prior permission of the United States Attorney General.

☐ See continuation page

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐    The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check if applicable.)

☐    The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). The defendant shall also comply with the additional conditions on the attached page (if indicated above).

## STANDARD CONDITIONS OF SUPERVISION

1)  the defendant shall not leave the judicial district without the permission of the court or probation officer;
2)  the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3)  the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4)  the defendant shall support his or her dependants and meet other family responsibilities;
5)  the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6)  the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7)  the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8)  the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)  the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B   Judgment in a Criminal Case - D. Massachusetts (10/01)
  Sheet 5, Part A — Criminal Monetary Penalties

Judgment - Page  4  of  5

CASE NUMBER: **1: 03 CR 10183  - 001 - PBS**
DEFENDANT:    **ELIAS GUERRA**

## CRIMINAL MONETARY PENALTIES

  The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $100.00 | | |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

  If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid in full prior to the United States receiving payment.

| **Name of Payee** | ***Total Amount of Loss** | **Amount of Restitution Ordered** | **Priority Order or Percentage of Payment** |
|---|---|---|---|
| | | | ☐ See Continuation Page |
| **TOTALS** | $0.00 | $0.00 | |

☐ If applicable, restitution amount ordered pursuant to plea agreement _____

☐ The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

  ☐ the interest requirement is waived for the ☐ fine and/or ☐ restitution.

  ☐ the interest requirement for the ☐ fine and/or ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18, United States Code, for offenses committed on or after September 13, 1994 but before April 23, 1996.

AO 245B    Judgment in a Criminal Case - D. Massachusetts (10/01)
    Sheet 5, Part B — Criminal Monetary Penalties

CASE NUMBER: **1: 03 CR 10183 - 001 - PBS**
DEFENDANT:              **ELIAS GUERRA**

Judgment - Page  5  of  5

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

**A** ☐ Lump sum payment of _____ due immediately, balance due

        ☐ not later than _____ , or
        ☐ in accordance with ☐ C, ☐ D, or ☐ E below; or

**B** ☐ Payment to begin immediately (may be combined with C, D, or E below); or

**C** ☐ Payment in _____ (e.g., equal, weekly, monthly, quarterly) installments of _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D** ☐ Payment in _____ (e.g., equal, weekly, monthly, quarterly) installments of _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
    term of supervision; or

**E** ☒ Special instructions regarding the payment of criminal monetary penalties:

    The $100.00 Special Assessment is due immediately.

Unless the court has expressly ordered otherwise in the special instruction above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court, unless otherwise directed by the court, the probation officer, or the United States attorney.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

    Case Number, Defendant Name, and Joint and Several Amount:

☐ The defendant shall pay the cost of prosecution.          ☐ See Continuation Page

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest (7) penalties, and (8) costs, including cost of prosecution and court costs.

AO 245B    Judgment in a Criminal Case - D. Massachusetts
Statement of Reasons - Sheet 1

# UNITED STATES DISTRICT COURT
### District of Massachusetts

UNITED STATES OF AMERICA
### V.

ELIAS GUERRA

**STATEMENT OF REASONS**

Case Number: **1: 03 CR 10183 - 001 - PBS**

John Amabile, Esq.
_____
Defendant's Attorney

[X]  The court adopts the factual findings and guideline application in the presentence report.

### OR

[ ]  The court adopts the factual findings and guideline application in the presentence report, except (see attachment, if necessary):

[ ] See Continuation Page

**Guideline Range Determined by the Court:**

| | | | |
|---|---|---|---|
| Total Offense Level: | 21 | | |
| Criminal History Category: | II | | |
| Imprisonment Range: | 41 | to 51 | months |
| Supervised Release Range: | 2 | to 3 | years |
| Fine Range: | $ 7,500.00 | to $ 75,000.00 | |

Defendant's Soc. Sec. No.:  none

Defendant's Date of Birth:  00/00/69

Defendant's USM No.:  24777-038

Defendant's Residence Address:

34 Hano Street
Allston, MA 02134

01/07/04
_____
Date of Imposition of Judgment

_Patti B Saris_
_____
Signature of Judicial Officer

The Honorable Patti B. Saris

Judge, U.S. District Court
_____
Name and Title of Judicial Officer

_____
Date

Defendant's Mailing Address:

Plymouth County House of Correction
26 Long Pond Road
Plymouth, MA 02360

AO 245B     Judgment in a Criminal Case - D. Massachusetts
Statement of Reasons - Sheet 2

DEFENDANT:          ELIAS GUERRA
CASE NUMBER:   **1: 03 CR 10183   - 001 - PBS**

Statement of Reasons - Page    2    of    4

## STATEMENT OF REASONS

☒ Fine waived or below the guideline range because of inability to pay.

Total Amount of Restitution:    $   _____

☐ Discretionary restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweighs the need to provide restitution to any victims, pursuant to 18 U.S.C. § 3663(a)(B)(ii) (or in offenses committed before April 23, 1996, pursuant to 18 U.S.C. § 3663(d)).

☐ Restitution pursuant to the mandatory victim restitution provisions is not ordered in this title 18 property offense because the number of identifiable victims is so large as to make restitution impracticable, pursuant to 18 U.S.C. § 3663A(c)(3)(A).

☐ Restitution pursuant to the mandatory victim restitution provisions is not ordered in this title 18 property offense because determining complex issues of fact and related to the cause of amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process, pursuant to 18 U.S.C. § 3663A(c)(3)(B).

☐ For offenses committed on or after September 13, 1994 but before April 23, 1996 that require the total amount of loss to be stated, pursuant to Chapters 109A, 110, 110A, and 113A of Title 18, restitution is not ordered because the economic circumstances of the defendant do not allow for the payment of any amount of a restitution order, and do not allow for the payment of any or some portion of a restitution order in the foreseeable future under any reasonable schedule of payments.

☐ Partial restitution is ordered, pursuant to 18 U.S.C. § 3553(c),  for the following reason(s):

AO 245B     Judgment in a Criminal Case - D. Massachusetts
            Statement of Reasons - Sheet 3

Statement of Reasons - Page __3__ of __4__

DEFENDANT:     ELIAS GUERRA
CASE NUMBER:   1: 03 CR 10183  - 001 - PBS

# STATEMENT OF REASONS

[X] The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by the application of the guidelines.

## OR

[ ] The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reasons:

## OR

[ ] The sentence departs from the guideline range:

    [ ] upon motion of the government, as a result of a defendant's substantial assistance, or

    [ ] for the following specific reason(s):

[ ] See Continuation Page

AO 245B    Judgment in a Criminal Case - D. Massachusetts
Statement of Reasons - Sheet 4

DEFENDANT:    ELIAS GUERRA
CASE NUMBER:   1:  03  CR  10183   - 001 - PBS

## ADDITIONAL FINDINGS AND GUIDELINES APPLICATIONS EXCEPTION

n/a

## ADDITIONAL REASONS FOR DEPARTURE FROM THE GUIDELINE RANGE

n/a

### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

**UNITED STATES OF AMERICA**

v.  **CRIMINAL NO.   03-10183-PBS**

**ELIAS GUERRA**
  **Defendant**


### MEMORANDUM OF SENTENCING HEARING
### AND
### REPORT OF STATEMENT OF REASONS


**Saris, D.J.**


  Counsel and the defendant were present for sentencing hearing on
____1/7/04_____.  The matters set forth were reviewed and
considered.  The reasons for sentence pursuant to Title 18 U.S.C. 3553(c), as
set forth herein, were stated in open court.

1.  Was the presentence investigation report (PSI) reviewed by counsel
and defendant including any additional materials received
concerning sentencing?

    __X__ yes  _____ no

2.(a) Was information withheld pursuant to FRCrP
32(c)(3)(A)?

    _____ yes  __X__ no

(b) If yes to (a), has summary been provided by the court
pursuant to FRCrP 32(c)(3)(B)?

    _____ yes  _____ no   N/A

3.(a) Were all factual statements contained in the PSI
adopted without objection?

    __X__ yes  _____ no

(b) If no to (a) the PSI was adopted in part with the
exception of the following factual issues in dispute:

    (c)    Disputed issues have been resolved as follows after
            \_\_\_\_ evidentiary hearing, \_\_\_ further submissions
            and/or \_\_\_ arguments:

4.(a)    Are any legal issues in dispute?

                \_\_\_\_\_ yes    __X__ no

        If yes, describe disputed issues and their resolution:

5.(a)    Is there any dispute as to guideline applications
        (such as offense level, criminal history category,
        fine or restitution) as stated in the PSI?

                \_\_\_\_\_ yes    __X__ no

        If yes, describe disputed areas and their resolution:

    (b)    Tentative findings as to applicable guidelines are:

        Total Offense Level: _____ 21 _____

        Criminal History Category:_____ II _____

        __41__ to  __51__ months imprisonment

        __24__ to  __36__ months supervised release

    $__7,500_____ to $_75,000_____ fine

                (plus $_____ cost of
                imprisonment/supervision)

    $_____ restitution

    $_100.00_____ special assessment ($_____ on
                      each of counts _____ )

6.(a)    Are there any legal objections to tentative findings?

                \_\_\_\_\_ yes    __X__ no

    (b)    If no, findings are adopted by the Court.

    (c)    If yes, describe objections and how they were addressed:

OR sentence hearing is continued to _____ to allow for
preparation of oral argument or filing of written submission by _____.

7.(a)    Remarks by counsel for defendant.[1]

                    __X__ yes    _____ no

  (b)    Defendant speaks on own behalf.

                    _____ yes    __X__ no

  (c)    Remarks by counsel for government.

                    __X__ yes    _____ no

8.(a)    The sentence will be imposed in accordance with the
         prescribed forms in the Bench Book Sec. 5.02 as follows:

         _____41_____ months imprisonment [I ORDER THAT CREDIT BE GIVEN
                        FOR 30 DAYS IN IMMIGRATION CUSTODY, MAKING THE
                        ADDITIONAL TIME TO BE SERVED 40 MONTHS]

         _____ months/intermittent community confinement

         _____ months probation

         _____24_____ months supervised release

    $ ____NONE_____ fine (including cost of imprisonment/supervision)

    $_____ restitution

    $ ___100.00_____ special assessment ($_____ on each of
                                          counts _____)

         Other provisions of sentence: (community service, forfeiture, etc.):

         - DEFENDANT SHALL NOT RETURN TO THE UNITED STATES WITHOUT THE LAWFUL
AUTHORITY OF THE ATTORNEY GENERAL

  (b)    After imposing sentence, the Court has advised the defendant of
         the defendant's right to appeal within 10 days of the entry of
         judgment in accordance with FRCrP 32(a)(2).

9.    Statement of reasons for imposing sentence.
      Check appropriate space.

  (a)_X_ Sentence is within the guideline range and that range does not

_____

    [1] The order of argument and/or recommendation and allocution may be
altered to accord with the Court's practice.

3

exceed 24 months and the Court finds no reason to depart from the sentence called for by application of the guidelines.

OR    ___ Sentence is within the guideline range and that range exceeds 24 months and the reason for imposing the selected sentence are:

(b)___Sentence departs from the guideline range as a result of:

    ___ substantial cooperation upon motion of the government

OR

    ___ a finding that the following (aggravating or mitigating) circumstance exists that is of a kind or degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines and that this circumstance should result in a sentence different from that described by the guidelines for the following reasons:

(c)___ Is restitution applicable in this case?

        _____ yes    _X_ no

Is full restitution imposed?

        _____ yes    _____ no

If no, less than full restitution is imposed for the following reasons:

(d)___ Is a fine applicable in this case?

        _X_ yes    _____ no

Is the fine within the guidelines imposed?

        _____ yes    _X_ no

If no, the fine is not within guidelines or no fine is imposed for the following reasons:

    _X_ Defendant is not able, and even with the use of a reasonable installment schedule is not likely to become able, to pay all or part of the required fine; OR

    _X_ Imposition of a fine would unduly burden the defendant's dependents; OR

    ___ Other reasons as follows:

10.    Was a plea agreement submitted in this case?

4

_____ yes    __X__ no

Check appropriate space:

___ The Court has accepted a Rule 11(e)(1)(A) charge
agreement because it is satisfied that the
agreement adequately reflects seriousness of the
actual offense behavior and accepting the plea
agreement will not undermine the statutory
purposes of sentencing.

___ The Court has accepted either a Rule 11(e)(1)(B)
sentence recommendation or a Rule 11(e)(1)(C)
sentence agreement that is within the applicable
guideline range.

___ The Court has accepted either a Rule 11(e)(1)(B)
sentence recommendation or a Rule 11(e)(1)(C)
sentence agreement that departs from the applicable
guideline range because the Court is satisfied that
such a departure is authorized by 18 U.S.C. 3553(b).

11.    Suggestions for guideline revisions resulting from this case are
submitted by an attachment to this report.

_____ yes    __X__ no

12.    The PSI is adopted as part of the record, either in whole or in
part as discussed above and is to be maintained by the U.S.
Probation Department under seal unless required for appeal.

13.    Judgment will be prepared by the clerk in accordance with above.

14.    The clerk will provide this Memorandum of Sentencing Hearing And
Report on Statement of Reasons to the U.S. Probation Department
for forwarding to the Sentencing Commission, and if the above
sentence includes a term of imprisonment, to the Bureau of
Prisons.

1/8/04
/ Date

United States District Judge

**EXHIBIT 2**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

```
UNITED STATES OF AMERICA       )
                               )
              vs.              )     Docket No.    03-CR-10183-PBS
                               )     Defendant No.  01
         ELIAS GUERRA          )
A/K/A: Marco Ramirez, Antonio Ramirez,)
     Marco Antonio Ramirez          )
FULL NAME: Elias Antonio Guerra Galvez)
```

---

### PRESENTENCE REPORT

<u>Prepared for</u>: Honorable Patti B. Saris, U.S. District Judge

<u>Prepared by</u>:  Denise A. Rivera, U.S. Probation Officer Assistant
          (617) 748-4103
<u>Reviewed by</u>:  John M. Bocon, Deputy Chief U.S. Probation Officer
          (617) 748-4569
<u>Sentencing Date</u>: 1/7/04     <u>Office Location</u>:  Boston

<u>Offense</u>:  Pleaded Guilty on 09/30/03

| CTS | Title & Section | Charges | Date Offense Concluded |
|-----|-----------------|---------|------------------------|
| 1 | 8 U.S.C. § 1326(a) | Illegal Re-entry of Deported Alien | 5/1/03 |

<u>Counts to be Dismissed</u>: None

<u>Date of Arrest</u>: 5/1/03     <u>Custodial Status</u>: 5/1/03 to 6/2/03: In BICE
                    custody. 6/3/03 to date: In federal custody.

Date of Birth: 10/1/69   Age:  34     Dependents: 3
Citizenship:  Guatemala   Sex:  Male     FBI No.: 903006CB6
SSN: none              Race: Hispanic   Alien Reg. No.: A76965922
Education: none         U.S. Marshal No.: 24777-038

Residence Address: 34 Hano Street, Allston, MA, 02134 (last known)
Mailing Address:   Plymouth County Correctional Facility
               26 Long Pond Road, Plymouth, MA 02360

<u>Detainers</u>: BICE Detainer
<u>Codefendants</u>: None

<u>Assistant U.S. Attorney</u>          <u>Defense Counsel</u>
Christopher F. Bator             John A. Amabile
(617) 748-3100                   Amabile & Burkly, P.C.
                                 308 Pleasant Street
                                 Brockton, MA 02401
                                 (617) 559-6966
                                 Appointed

Date report prepared: 12/3/03         Mandatory Minimum: no
Revised:

**PART A.   THE OFFENSE**

### Charges and Convictions

(1) On May 28, 2003, a federal grand jury at Boston, Massachusetts returned a one-count Indictment charging **Elias Guerra, a/k/a Marco Ramirez, a/k/a Antonio Ramirez,** with Illegal Re-entry of Deported Alien, in violation of 8 U.S.C. § 1326(a).

(2) The one-count Indictment charges that on or about May 1, 2003, at Boston, in the District of Massachusetts, **Elias Guerra, a/k/a Marco Ramirez, a/k/a Antonio Ramirez,** being an alien and having been excluded, deported and removed from the United States, was found in the United States without having received the express consent of the United States Attorney General prior to May 1, 2003, or the express consent of the Secretary of the Department of Homeland Security since that date, to reapply for admission to the United States.  All in violation of 8 U.S.C. § 1326(a) and (b)(2) and 6 U.S.C. § 202(3) and (4) and § 557.

(3) On May 1, 2003, **Elias Guerra** was arrested by the Bureau of Immigration and Customs Enforcement (BICE).   On June 2, 2003, **Guerra** appeared in U.S. District Court, at Boston, before U.S. Magistrate Judge Joyce L. Alexander.   A detention hearing was scheduled for June 4, 2003 and the defendant was temporarily detained.

(4) On June 4, 2003, **Elias Guerra** appeared for a detention hearing before Magistrate Judge Alexander where he waived the detention hearing and agreed to voluntary detention.

(5) On September 30, 2003, **Elias Guerra** appeared in U.S. District Court, at Boston, before the Honorable Patti B. Saris and entered a plea of guilty to the one-count Indictment.   After a factual basis was presented, the Court accepted the plea and disposition was scheduled for January 7, 2004.

### Codefendants

(6) None

### Related Cases

(7) None

1

**Plea Agreement**

(8) There is no plea agreement in this case.

**Offense Conduct**

(9) The following statement of the offense was compiled from the complaint submitted by Special Agent David J. Buckley with the Bureau of Immigration and Customs Enforcement ("BICE") (formerly the Immigration and Naturalization Service):

(10) The defendant is a native of Guatemala. **Guerra's** BICE Alien file ("A-file") indicates that, on November 5, 1999, **Guerra** was located by the Immigration and Naturalization Service ("INS") at the Middlesex House of Correction, Billerica, Massachusetts. The Boston Police had previously arrested the defendant for Assault and Battery.

(11) On November 12, 1999, **Guerra** was released to INS and deportation proceedings were initiated and on December 3, 1999, **Guerra** was ordered deported to Guatemala. On January 18, 2000, **Guerra** was deported from the United States at Miami, Florida to Guatemala. A Warrant of Removal/Deportation was executed on January 18, 2000, evidencing his actual removal and includes a signature and inked right index print taken from him at the time of his removal.

(12) At the time of his removal, **Guerra** had a criminal record in Massachusetts for Possession of Cocaine; Assault and Battery on a Police Officer; Assault and Battery; Assault and Battery; Assault and Battery with a Dangerous Weapon, to wit, a bottle; Assault and Battery with a Dangerous Weapon, to wit, a shod food; Malicious Destruction of Property; Attempting to Commit a Crime; and Disorderly Person.

(13) On June 4, 2000, **Guerra** was arrested by Boston Police for Drinking Alcohol in Public and Trespassing. On April 30, 2003, a BICE duty officer received an anonymous telephone call that **Guerra** was residing at 34 Hano Street, Allston, MA. On May 1, 2003, **Guerra** was located by BICE at 34 Hano Street, arrested and taken into BICE custody.

(14) On May 1, 2003, a ten-print fingerprint card was obtained from **Guerra** and submitted to the Federal Bureau of Investigation ("FBI") along with a copy of the Warrant of Deportation for **Guerra**, evidencing his actual deportation.    The FBI compared the right index print on the Warrant of Deportation with the right index print taken from the defendant on May 1, 2003, and determined that the fingerprints were identical.

(15) The defendant's A-file, maintained by BICE, was reviewed and it contains no documentation to suggest that the defendant ever applied for permission to re-enter the United States following his removal on January 18, 2000.

### Victim Impact

(16) There is no identifiable victim in this instance.

### Obstruction of Justice

(17) There is no available information to indicate that the defendant has obstructed justice.

### Acceptance of Responsibility

(18) The offense level is reduced three levels per U.S.S.G. § 3E1.1 (a) & (b) and upon a motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently.

## Offense Level Computation

(19) The Guideline Sentencing Range has been calculated by using the guidelines in effect at the time of sentencing, that is, the guidelines contained in the Guideline Manual issued, 11/1/03.  The guidelines that affect the offense level and/or the criminal history calculations have changed since the instant offense was committed; however, the changes do not affect the offense level computation.

(20) Violations of 8 U.S.C. § 1326(a) are found at U.S.S.G. § 2L1.2.

(21) **Base Offense Level:** § 2L1.2(a) assigns a base offense level of 8.                                                                                           **8**

(22) **Specific Offense Characteristics:** § 2L1.2(b)(1)(A) directs that the base offense level be increased by 16 levels if the defendant previously was deported, or unlawfully remained in the United States after a conviction for a felony that is (1) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearm offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense.  As the defendant's previous convictions on 3/24/99 (see ¶ 30) and 8/16/99 (see ¶ 32), were for crimes of violence, the offense level is increased by 16 levels.      **+16**

(23) **Adjustment for Role in the Offense:** None                **0**

(24) **Victim Related Adjustment:** None                          **0**

(25) **Adjustment for Obstruction of Justice:** None             **0**

(26) **Adjusted Offense Level (subtotal):**                     **24**

(27) **Adjustment for Acceptance of Responsibility:** A 3 level reduction has been applied, pursuant to § 3E1.1(a) and (b).    **-3**

(28) **Total Offense Level:**                                   **21**

4

**PART B.  THE DEFENDANT'S CRIMINAL HISTORY**

**Juvenile Adjudications**

(29)  None known

**Criminal Convictions**

| Date of Arraign. | Charge/ Docket#/Court | Date Sentence Imposed Disposition | Guideline/ Score |
|---|---|---|---|
| (30) 2/26/99 (Age 29) | A&B On A Police Officer Dkt #9951CR0460A | 3/24/99: Glty, prob to 3/22/00. 11/3/99: VOP, glty, 90 days cmtd, susp, prob to 3/22/00. | 4A1.1(c) 1 |
| | Disorderly Person Dkt #9951CR0460B | 3/24/99: Adm suff fcts, suff fcts fnd, cont w/out find to 3/22/00. 11/3/99: VOP, glty, 10 days cmtd. 11/12/99: Rel to INS. | |

Waltham Dist Ct

The defendant was represented by counsel.  On count B, the defendant admitted to sufficient facts and sufficient facts were found after colloquy and 278 § 29D warning was given.

According to a Massachusetts State Police report, on 2/26/99, a trooper was investigating subjects that he believed may have been involved in a previous indecent assault on a female jogger.  A second trooper heard about the investigation and upon arriving, observed the defendant and another male pushing and shoving the other trooper while he was trying to speak to them.  The second trooper then observed the defendant strike the trooper in the face repeatedly.  The second trooper came to the aide of the first trooper in securing both males.  The defendant was placed under arrest and a strong odor of alcoholic beverage came from the defendant's breath.  The defendant continued to thrash about in a manner that made it difficult placing him into custody.

5

```
(31)
5/10/99           Poss Class B Cont     7/8/99: Adm suff      4A1.1(c)
(Age 29)          Sub                   fcts, suff fcts          1
                  Dkt #9908CR0609A      fnd, cont w/out
                                        find to 7/7/00.
                                        10/15/99: VOP,
                                        glty, 1 yr cmtd,
                                        susp to 7/7/00.
```

Brighton Dist Ct

The defendant was represented by counsel.  The defendant admitted to sufficient facts and sufficient facts were found after colloquy and 278 § 29D warning was given.

According to a Boston Police report, on 5/08/99, officers responded to a call about a fight at 86 Brainerd Road, Apt. 1, in Allston. Upon arrival the officers were met by the caller who stated that there was something wrong with his roommate.  The caller stated that earlier he was in his room when the defendant forced his way into the caller's room with a strange look about him and talking but not making sense.  The caller then fled the apartment and called police on a nearby pay telephone.  The officers accompanied the caller back to the apartment where they found the defendant on his knees looking for something.  The defendant did not respond when the officers asked him if he was alright.  The defendant then stood and faced the officers, swaying back and forth on his feet. The officers observed a small plastic bag in the defendants right hand.   The defendant gave the bag to the officers, where upon further investigation, the officers observed some white powder inside the bag believed to be cocaine.  The defendant was placed under arrest.

6

```
(32)
8/16/99          Assault & Battery      10/15/99: Glty,          4A1.1(c)
(Age 29)         Dkt #9908CR0996A       18 mo cmtd susp,             1
                                        prob to 10/19/01.

                 Assault & Battery      10/15/99: Glty,
                 Dkt #9908CR0996B       prob to 10/19/01.

                 A&B Dang Weapon        10/15/99: Glty,
                 Dkt #9908CR0996C       prob to 10/19/01.

                 A&B Dang Weapon        10/15/99: Glty,
                 Dkt #9908CR0996D       prob to 10/19/01.

                 Mal Destruction Of     10/15/99: Glty,
                 Property               prob to 10/19/01.
                 Dkt #9908CR0996E

                 Attempt To Commit      10/15/99: Glty,
                 A Crime                prob to 10/19/01.
                 Dkt #9908Cr0996F

                 Brighton Dist Ct
```

The defendant was represented by counsel.  According to a Boston Police report, on 8/13/99, an officer responded to a call at 17 Higgins Street, Allston, MA.  Upon arrival the officer was met by the victims, Ms. Navas, her son and a neighbor, and the witness. Ms. Navas stated that the defendant, whom she has dated, arrived at her apartment door intoxicated and demanding entry.  Ms. Navas would not allow the defendant in so he began to kick and bang on the door.  Fearing that the defendant was causing damage to the door, Ms. Navas opened it to ask the defendant to leave.  As Ms. Navas opened the door, the defendant punched her in the head at least twice and then punched the defendant's son in the face.  As Ms. Navas and her son struggled with the defendant, a neighbor came out of his apartment and attempted to settle the disturbance.  The defendant became combative with the neighbor and another struggle ensued.  During that struggle, the defendant kicked the neighbor in the groin, then grabbed a bottle and began chasing the neighbor down the street, finally throwing the bottle at the neighbor but missing him.  The police found the defendant and placed him under arrest.

## Criminal History Computation

(33) The total of the criminal history points is 3.

(34) According to the Sentencing Table (U.S.S.G. Chapter 5, Part A), 2 to 3 criminal history points establish a Criminal History Category of II.

|  |  |
|---|---|
| **TOTAL POINTS** | **3** |
| **CATEGORY** | **II** |

## Other Criminal Conduct

(35) None known

## Pending Charges

(36) None known

## Other Arrests

### Adult

| Date of Arraign. | Charge/ Agency | Date Sentence Imposed Disposition |
|---|---|---|
| (37) 11/4/96 (Age 27) | A&B Dang Weapon Dkt #9608CR1730A | 5/14/97: Adm suff fcts, suff fcts fnd, cont w/out find to 11/13/98. 11/13/98: Dism. |
|  | Brighton Dist Ct |  |
| (38) 10/14/97 (Age 28) | Asslt Dang Weapon Dkt #9708CR1502 | 11/6/97: Dism. |
|  | Brighton Dist Ct |  |

8

**PART C.   OFFENDER CHARACTERISTICS**

### Personal and Family Data

(39) The presentence interview was completed with the assistance of a Spanish interpreter.

(40) The defendant reports that he was born in Canton Lagunvilla, Agua Blanca, Jutiapa, Guatemala on October 1, 1969, the seventh of eleven children born to Juan Antonio Guerra and Elodia de Jesus Guerra (nee Galvez). The defendant reports that since three of his older siblings passed away prior to their fifth birthday, he does not know their names.

(41) The defendant reports that Canton Lagunvilla is a small village out in the country where the majority of the residents earn a living by renting land to farm. The defendant's father rents land and farms corn and beans to support the family. Although Mr. Guerra worked hard to support his family, it was difficult to make ends meet. The defendant explained that his three older siblings that had passed away were sick and his parents did not have enough money to take them to a doctor. Furthermore, the defendant's parents could not afford to send their first seven children to school. However, the defendant's parents were able to send their three youngest children (Gabriel, Marta and Isabel) to a few years of elementary school.

(42) The defendant reports that although his family was poor, he had a good childhood and that he enjoyed a good relationship with his family. According to the defendant, they are still a close family.

(43) The following information concerns the defendant's family members. All ages concerning the defendant's family members are approximate:

(44) **Father:** Juan Antonio Guerra, age 69, resides with his wife in Canton Lagunvilla, Agua Blanca, Jutiapa, Guatemala. Mr. Guerra has always worked as a farmer.

(45) **Mother:** Elodia de Jesus Guerra (nee Glavez), age 68, resides with her husband and is a housewife.

(46) **Sister:** Silvia Modesta Guerra, age 45, is single with three children and resides with her boyfriend, Ernesto Alarcon, in Puerto Barrios, Guatemala. Silvia is currently a housewife.

9

## PART C.   OFFENDER CHARACTERISTICS

### Personal and Family Data

(39) The presentence interview was completed with the assistance of a Spanish interpreter.

(40) The defendant reports that he was born in Canton Lagunvilla, Agua Blanca, Jutiapa, Guatemala on October 1, 1969, the seventh of eleven children born to Juan Antonio Guerra and Elodia de Jesus Guerra (nee Galvez). The defendant reports that since three of his older siblings passed away prior to their fifth birthday, he does not know their names.

(41) The defendant reports that Canton Lagunvilla is a small village out in the country where the majority of the residents earn a living by renting land to farm. The defendant's father rents land and farms corn and beans to support the family. Although Mr. Guerra worked hard to support his family, it was difficult to make ends meet. The defendant explained that his three older siblings that had passed away were sick and his parents did not have enough money to take them to a doctor. Furthermore, the defendant's parents could not afford to send their first seven children to school. However, the defendant's parents were able to send their three youngest children (Gabriel, Marta and Isabel) able to a few years of elementary school.

(42) The defendant reports that although his family was poor, he had a good childhood and that he enjoyed a good relationship with his family. According to the defendant, they are still a close family.

(43) The following information concerns the defendant's family members. All ages concerning the defendant's family members are approximate:

(44) **Father:** Juan Antonio Guerra, age 69, resides with his wife in Canton Lagunvilla, Agua Blanca, Jutiapa, Guatemala. Mr. Guerra has always worked as a farmer.

(45) **Mother:** Elodia de Jesus Guerra (nee Glavez), age 68, resides with her husband and is a housewife.

(46) **Sister:** Silvia Modesta Guerra, age 45, is single with three children and resides with her boyfriend, Ernesto Alarcon, in Puerto Barrios, Guatemala. Silvia is currently a housewife.

(47) **Brother**: Miguelangel Guerra, age 40, is single with four children and resides with his girlfriend, Margali Villeda, in Canton Lagunvilla, Agua Blanca, Jutiapa, Guatemala. Miguelangel is a farmer.

(48) **Brother**: Israel de Jesus Guerra, age 40, is married with four children and resides with his wife, Lorena Perez, in Canton Lagunvilla, Agua Blanca, Jutiapa, Guatemala. Israel is a farmer.

(49) **Brother**: Juan Isaac Guerra, age 32, is married with two children and resides with his wife in Guatemala City, Guatemala. Juan is employed as a security guard for a beer company.

(50) **Brother**: Gabriel de Manuel Guerra, age 27, is married with four children and resides with his wife in Canton Lagunvilla, Agua Blanca, Jutiapa, Guatemala. Gabriel is a farmer.

(51) **Sister**: Marta Esperanza Guerra, age 25, is married with three children and resides with her husband, Veniz Aguirre, in Chaguite, Jutiapa, Guatemala. Marta is a housewife and her husband is a farmer.

(52) **Sister**: Isabel de Maria Guerra, age 22, is married with two children and resides with her husband, Rigoberto Aguirre, in Guatemala City, Guatemala. Isabel is a housewife and her husband is employed as a mailman.

(53) The defendant reports that at the age of 16, he enlisted in the Guatemalan army where he served for three years. While in the army, the defendant began dating Leticia Monroy, a childhood friend. The defendant stated that he had intended to make a career of the military but fell in love with Ms. Monroy and wanted to marry her. During 1988, the defendant and Ms. Monroy were married in Canton Lagunvilla, Agua Blanca, Jutiapa, Guatemala and they have three children: Miriam Lecet Guerra Monroy, age 14; Romero Antonio Guerra Monroy, age 12; and Chabelis Anahi Guerra Monroy, age 8.

(54) The defendant reports that during 1996, he left his family and came to the United States in search of better employment opportunities. According to the defendant, he entered the United States by crossing the Mexican border and traveled to Massachusetts where he knew a friend who resided in Allston with whom he stayed.

(55) The defendant reports that for the first few years that he was living in the United States, he would send money home for his family. The defendant explained that he would send the money to his father who would give some to the defendant's wife and put the rest in a bank account, as it was the defendant's intention to return to Guatemala when he had saved enough money. In time, the

10

defendant's wife began to resent the fact that the defendant did not send her the money directly and began giving the defendant a "hard time" about it. The defendant reported that after some time, he finally relented and gave his wife the control of the bank account and began sending the money directly to her.

(56) The defendant reports that during late 1999, he received word that his wife had taken all the money in the bank account and abandoned their children. According to the defendant, although the defendant's parents took in his children, the government wanted to take the children since their mother had abandoned them and their father was not in the country. However, the defendant's parents were able to obtain temporary custody of the children.

(57) The defendant reports that at the time his wife abandoned their children, he was on probation in Waltham District Court and knew that he could not just leave the country. The defendant stated that he spoke with his probation officer and explained the situation with his children and his probation officer suggested that they go before a judge. According to the defendant, on 11/3/99, he went before a judge who told him that he could be incarcerated for 10 days after which he would be released from his obligation with the Court.

(58) Waltham District Court documents indicate that on 11/3/99, the defendant was sentenced to 10 days incarceration on count 2 but on count 1, the defendant was sentenced to 90 days incarceration, sentence suspended, probation until 3/22/00.   Therefore, the defendant's obligation was not satisfied by just 10 days of incarceration. Furthermore, the defendant was also on probation imposed in Brighton District Court on two separate cases.

(59) However, during the 10 days that the defendant was in custody, INS was contacted and they lodged a detainer against the defendant. On 11/12/99, the defendant was released to INS custody and on 1/18/00, he was deported to Guatemala. According to the defendant, while in INS custody, he had no counsel and no interpreter, and only remembers being in front of television monitor and then being taken to Miami and deported. The defendant stated that he was given no warning that if he returned to the United States that he would be arrested and prosecuted. The defendant reports that while awaiting his deportation in Miami, someone told him that if he returned to the United States and was found, he would just be deported again.

(60) The defendant reports that approximately one month after returning to Guatemala, he was able to obtain legal custody of his children.   Once the defendant was granted sole custody of his

11

children, he filed papers with the Guatemalan government giving legal custody of his children to his father. As such, the defendant was free to return to the United States so he could return to work.

(61) The defendant remained in Guatemala for approximately six months. During that time, he was unable to locate his wife. The defendant explained that his wife's parents were already deceased and her siblings had relocated to different parts of the country. The defendant stated that he nor his family have ever heard from his wife again.

(62) The defendant reports that during the summer of 2000, he returned to the United States and resided in a rented room located at 34 Hano Street, Allston, MA where he paid $450 in rent. No home visit was performed as the defendant has no family residing in the United States.

(63) According to the defendant, he returned to the United States because had he remained in Guatemala, he would have only been able to provide the "bare necessities" for his family. Reportedly, with the money the defendant earned in the United States, he sent approximately $150 to $200 every two weeks to his father. The defendant stated that by working in the United States, he was able to provide better food and clothing for his children and parents, and he was able to send his children to school.

(64) The defendant reports that his parents are very sad over his present situation and hope that he will be allowed to return home soon. The defendant stated that upon his return to Guatemala, he hopes to be able to find work in the capital city so he can continue to better support his children and parents. However, if he is unsuccessful, he will be forced to return to farming.

### Physical Condition

(65) The defendant stands 5'8" tall, weighs 175 pounds, has brown eyes and brown hair. The defendant reports that he has the following three tattoos: two doves on his left forearm; one dove on his right forearm; and one dove on the right side of his chest.

(66) The defendant reports that he has no history of health problems and currently is healthy. The defendant has been seeing the doctor at the Plymouth County Correctional Facility for acne that has broken out on his face and back. The defendant has been prescribed Tetracycline for the past five months but recently his medication was changed due to the length of time he has been on Tetracycline. The defendant could not recall the name of the new medication.

### Mental and Emotional Health

(67) The defendant reports that he has no history of mental or emotional problems and no history of treatment for such problems.

### Substance Abuse

(68) The defendant reports that he has never used or experimented with any drugs but admits to a history of alcohol abuse. According to the defendant, he began having problems with his consumption of alcohol a few years after he came to the United States, when he began having problems with his wife. The defendant stated that his drinking became worse after his wife abandoned their children.

(69) The defendant reports that he only drank on Friday's and Saturday's, nights when he would not have to go to work the next day. The defendant stated that he would drink anything and sometimes drank too much and would not know where he was.

(70) The defendant stated that while he was on probation, he was ordered to participate in alcohol treatment but could not recall the name of the program. The defendant reports that since completing the treatment, he no longer drinks to excess. According to the defendant, occasionally on a Saturday night, he shared a 12-pack of beer with his friends.

### Education & Vocational Skills

(71) The defendant reports that he never attended school, as his family was too poor. However, from 1985 to 1988, the defendant enlisted in the Guatemalan army where he was taught to read and write "a little." The defendant reports that he received no other specialized training or skills.

### Employment Record

(72) 6/2/03 to date: The defendant has been in federal custody.

(73) 5/1/03 to 6/2/03: The defendant was in BICE custody.

(74) 6/2000 to 5/1/03: The defendant reports that he was employed as a cleaning person for a parking garage located on Congress Street in Boston, MA where he earned $675 bi-weekly. The defendant could not recall the name of his employer.

(75) The defendant reports that he also worked evenings cleaning offices for American Cleaners located in Quincy, MA where he earned $190 per week.

13

(76) 1/18/00 to 6/2000: The defendant reports that he resided in Guatemala and was employed as a farmer.

(77) 11/12/99 to 1/18/00: The defendant was in INS (now know as BICE) custody.

(78) 11/3/99 to 11/12/99: The defendant was in Massachusetts state custody.

(79) 1996 to 11/3/99: The defendant reports that he was employed as a factory worker for a clothing manufacturer located in Allston, MA. The defendant could not recall the name of the company.

(80) The defendant also reports that he was employed as an office cleaner for 78 Clean located in Allston, MA. The employer could not be located.

(81) The defendant reports that when he first arrived in the United States he was employed as a dishwasher for a restaurant located in Brookline, MA. The defendant could not recall the name of the restaurant.

(82) Prior to 1996: The defendant resided in Guatemala and was always employed as a farmer. However, from 1985 to 1988, the defendant reports that he was enlisted in the Guatemalan army.

## Financial Condition - Ability to Pay

(83) The following information regarding the financial status of the defendant was obtained from the financial statement submitted by the defendant on 10/23/03.

(84) The defendant reported no significant assets or liabilities.

(85) This paragraph serves as notice to the defendant that, pursuant to 18 U.S.C. § 3603, if the defendant is placed on probation or supervised release, the defendant may be periodically required to provide updated information fully describing the defendant's financial condition and the financial condition of the defendant's dependents.

(86) No inquiry was made with the Internal Revenue Service since the defendant reported that he never filed an income tax return.

14

## PART D.  SENTENCING OPTIONS

### Custody

(87) **Statutory Provisions:**  The maximum term of imprisonment is 20 years on the one count of conviction.    18 U.S.C.  §  3559(a) classifies this offense as a Class C felony.

(88) **Guideline Provisions:** Based upon a Total Offense Level of 21 and a Criminal History Category of II, the guideline imprisonment range is 41 to 51 months.

### Impact of Plea Agreement

(89) There is no plea agreement in this case.

### Good Time Provisions

(90) As per 18 U.S.C. § 3624(b), prisoners who are serving a term of imprisonment of more than 1 year and have shown a satisfactory institutional adjustment shall receive credit toward the service of their sentence of 54 days at the end of each year of their term of imprisonment, beginning at the end of the first year of their term of imprisonment. Such credit vests at the time the prisoner is released from custody. Credit for the last year or portion of that year of the term of imprisonment shall be prorated and credited within the last 6 weeks of the sentence.

(91) Good time cannot be earned on a sentence of 1 year or less; the sentence must exceed 1 year, even by 1 day.  According to the Bureau of Prisons, for a sentence of 1 year and 1 day, good time would be prorated and would amount to 47 days.

### Supervised Release

(92) **Statutory Provisions:**  If a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than 3 years on the one count of conviction, since this is a Class C felony, pursuant to 18 U.S.C. § 3583(b).

(93) **Guideline Provisions:** If more than 1 year of imprisonment is imposed, supervised release is required by the guidelines, pursuant to U.S.S.G. § 5D1.1.  The term of supervised release is at least 2 but not more than 3 years, pursuant to U.S.S.G. § 5D1.2(a)(2).

15

### Probation

(94) **Statutory Provisions:**    As per 18 U.S.C. § 3561(a), the defendant is eligible for probation. The authorized term of probation is 1 to 5 years, pursuant to 18 U.S.C. § 3561(c).

(95) **Guideline Provisions:** If the minimum term of imprisonment in the applicable guideline range is over 6 months, probation is not authorized by the guidelines unless the Court departs downward.

### Fines

(96) **Statutory Provisions:** There is a maximum fine of $250,000 on the 1 count of conviction, pursuant to 18 U.S.C. § 3571(b)(3).

(97) **Guideline Provisions:** The fine range is from $7,500 to $75,000, pursuant to U.S.S.G. § 5E1.2(c)(1) and (c)(2).

### Special Assessment

(98) A total Special Assessment of $100 is mandatory ($100 on the one (1) count of conviction), pursuant to 18 U.S.C. § 3013.

### Interest on Fines and Restitution

(99) As per 18 U.S.C. § 3612(f), the defendant shall pay interest on any fine or restitution of more than $2,500, unless they are paid in full before the 15th day after sentencing.  Interest will be computed daily at a rate pegged to the U.S. Treasury Bills.

(100) The Court, as per statute, can determine that the defendant does not have the ability to pay interest and may: (a) waive the requirement for interest; (b) limit the total interest payable to a specific dollar amount; or (c) limit the length of the period during which interest may accrue.

(101) According to the Claims Unit of the U.S. Attorney's Office, if the Court makes no provisions for the waiver of the interest on a fine over $2,500, interest will continue to accrue on the unpaid balance of the fine if the defendant is incarcerated, is pending appeal or is paying off the fine by installment payments while on probation or supervised release.

### Restitution

(102) Restitution is not an issue in this case.

**PART E.  FACTORS THAT MAY WARRANT DEPARTURE**

(103) Note: Presentation of information in this section does not constitute a recommendation by the probation officer for a departure.

(104) None

Respectfully submitted,

**ROBERT P. RYAN**
**CHIEF U.S. PROBATION OFFICER**

by _____

Denise A. Rivera
U.S. Probation Officer Assistant

Reviewed & Approved:

John M. Bocon
Deputy Chief U.S. Probation Officer

17

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
vs. ) Docket No.    03-CR-10183-PBS
) Defendant No.  01
ELIAS GUERRA )
A/K/A: Marco Ramirez, Antonio Ramirez,)
Marco Antonio Ramirez )
FULL NAME: Elias Antonio Guerra Galvez)

### PRESENTENCE REPORT

Prepared for: Honorable Patti B. Saris, U.S. District Judge

Prepared by:  Denise A. Rivera, U.S. Probation Officer Assistant
(617) 748-4103
Reviewed by:  John M. Bocon, Deputy Chief U.S. Probation Officer
(617) 748-4569
Sentencing Date: 1/7/04     Office Location:  Boston

Offense:  Pleaded Guilty on 09/30/03

|     |                     |                     | Date Offense |
|-----|---------------------|---------------------|--------------|
| CTS | Title & Section     | Charges             | Concluded    |
| 1   | 8 U.S.C. § 1326(a)  | Illegal Re-entry of | 5/1/03       |
|     |                     | Deported Alien      |              |

Counts to be Dismissed: None

Date of Arrest: 5/1/03     Custodial Status: 5/1/03 to 6/2/03: In BICE
custody. 6/3/03 to date: In federal custody.

Date of Birth: 10/1/69     Age:  34          Dependents: 3
Citizenship: Guatemala     Sex:  Male        FBI No.: 903006CB6
SSN: none                  Race: Hispanic    Alien Reg. No.: A76965922
Education: none            U.S. Marshal No.: 24777-038

Residence Address: 34 Hano Street, Allston, MA, 02134 (last known)
Mailing Address:   Plymouth County Correctional Facility
26 Long Pond Road, Plymouth, MA 02360

Detainers: BICE Detainer
Codefendants: None

Assistant U.S. Attorney          Defense Counsel
Christopher F. Bator             John A. Amabile
(617) 748-3100                   Amabile & Burkly, P.C.
308 Pleasant Street
Brockton, MA 02401
(617) 559-6966
Appointed

Date report prepared: 12/3/03    Mandatory Minimum: no
Revised: 12/29/03

## PART C.  OFFENDER CHARACTERISTICS

### Personal and Family Data

(39) The presentence interview was completed with the assistance of a Spanish interpreter.

(40) The defendant reports that he was born in Canton Lagunvilla, Agua Blanca, Jutiapa, Guatemala on October 1, 1969, the seventh of eleven children born to Juan Antonio Guerra and Elodia de Jesus Guerra (nee Galvez).  The defendant reports that since three of his older siblings passed away prior to their fifth birthday, he does not know their names.

(41) The defendant reports that Canton Lagunvilla is a small village out in the country where the majority of the residents earn a living by renting land to farm.  The defendant's father rents land and farms corn and beans to support the family.  Although Mr. Guerra worked hard to support his family, it was difficult to make ends meet.  The defendant explained that his three older siblings that had passed away were sick and his parents did not have enough money to take them to a doctor.  Furthermore, the defendant's parents could not afford to send their first seven children to school.  However, the defendant's parents were able to send their three youngest children (Gabriel, Marta and Isabel) to a few years of elementary school.

(42) The defendant reports that although his family was poor, he had a good childhood and that he enjoyed a good relationship with his family.  According to the defendant, they are still a close family.

(43) The following information concerns the defendant's family members.  All ages concerning the defendant's family members are approximate:

(44) **Father:** Juan Antonio Guerra, age 69, resides with his wife in Canton Lagunvilla, Agua Blanca, Jutiapa, Guatemala. Mr. Guerra has always worked as a farmer.

(45) **Mother:** Elodia de Jesus Guerra (nee Galvez), age 68, resides with her husband and is a housewife.

(46) **Sister:** Silvia Modesta Guerra, age 45, is single with three children and resides with her boyfriend, Ernesto Alarcon, in Puerto Barrios, Guatemala.  Silvia is currently a housewife.

**PART E.  FACTORS THAT MAY WARRANT DEPARTURE**

(103) Note: Presentation of information in this section does not constitute a recommendation by the probation officer for a departure.

(104) The Court may wish to consider a downward departure pursuant to U.S.S.G. § 5K2.0(a)(2)(B), <u>Grounds for Departure</u>, Departures Based on Circumstances of a Kind Not Adequately Taken into Consideration, Unidentified Circumstances.  A departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence.

(105) The guidelines do not take into account any time in which a defendant is held civilly on conduct that is part of the instant offense.  In this instance, the defendant was held by the Bureau of Immigration and Customs Enforcement for a total of thirty-two days. The Bureau of Prisons currently does not take into account the time in which a defendant is civilly detained when calculating credit for time served.

Respectfully submitted,

**ROBERT P. RYAN**
**CHIEF U.S. PROBATION OFFICER**

by _Denise A. Rivera_
Denise A. Rivera
U.S. Probation Officer Assistant

Reviewed & Approved:

_John M. Bocon/Jr_
John M. Bocon
Deputy Chief U.S. Probation Officer

## ADDENDUM TO THE PRESENTENCE REPORT

### United States v. Elias Guerra
### Docket No. 03-10183-PBS

The Probation Officer certifies that the presentence report, including any revision thereof, has been disclosed to the defendant's attorney and counsel for the Government and that the content of the Addendum has been communicated to counsel. The Addendum fairly states any objections they have made.

### OBJECTIONS

### By the Government

No objections have been submitted by the government.

### By the Defendant

The following objections have been submitted on behalf of Elias Guerra, through his attorney, John A. Amabile:

**OBJECTION #1:** ¶45: The defendant's mother's maiden name should read "Galvez."

**Probation Officer's Response:** The report has been amended.

**OBJECTION #2:** ¶104: The defendant believes that a downward departure is appropriate given his family circumstances.

**Probation Officer's Response:** The defendant's comments are provided to the Court via the addendum.

18

**Changes/Additions by the Probation Office**:

**Face Sheet**: The Face Sheet has been amended to reflect the revised date of the presentence report.

¶**104**: This paragraph has been amended to include information regarding factors that may warrant departure.

Respectfully submitted,

**ROBERT P. RYAN**
**CHIEF U.S. PROBATION OFFICER**

By: _____
Denise A. Rivera
U.S. Probation Officer Assistant

Reviewed and Approved:

_____
Gregory J. Wollaston
Supervising U.S. Probation Officer

Date: December 29, 2003

19

EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| V. | ) | CR # 03-10183 |
| | ) | |
| ELIAS GUERRA | ) | |

### MOTION FOR DOWNWARD DEPARTURE

The defendant in the above-entitled matter requests that the Court depart below the

sentencing guidelines and impose a reasonable sentence under the circumstances and in the

interest of justice. As grounds therefore, counsel states that the defendant was motivated to

commit the crime by extreme family circumstances in that he is an uneducated person from

Guatemala, who is the father of three young children. His wife, the mother of the children,

abandoned the family, stranding the children with the defendant's elderly parents, who are

destitute tenant farmers. In order to try to insure that they would remain in his family's care, and

in an attempt to provide food and education for his children, the defendant returned to the United

States. His motive was solely unselfish. To impose a guideline sentence will create unreasonable

consequences to the innocent children, and is not in the interest of justice. Since mercy is a

component of justice, a lesser sentence will fulfill all of society's interest in punishing this crime,

for which the defendant has accepted full responsibility.

Respectfully submitted,

John A. Amabile
Attorney for the defendant
380 Pleasant Street
Brockton MA  02301
508-559-6966
BBO # 016940